L. David WILSON, Appellant,

v.

GOOD WILL PUBLISHERS and
Cincinnati Companies,
Appellees.

No. 00–2066.

Supreme Court of Iowa.

Nov. 13, 2003.

William D. Scherle and Aaron T. Oliver
of Hansen, McClintock & Riley, Des
Moines, for appellant.

David L. Jenkins of Bradshaw, Fowler,
Proctor & Fairgrave, P.C., Des Moines, for
appellees.

LARSON, Justice.

David Wilson suffered a heart attack
while on a road trip for his employer, Good
Will Publishers, Inc. Believing his heart
attack arose out of his employment, Wilson
filed a claim against Good Will for work-
ers' compensation benefits. The industrial
commissioner and the district court denied
benefits. The court of appeals reversed,
concluding that Wilson had proved a suffi-
cient nexus to his job to recover benefits.
We vacate the decision of the court of
appeals and affirm the judgment of the
district court.

## I. Facts and Prior Proceedings.

David Wilson worked as a sales trainer for Good Will, traveling across the country from his home in Tabor, Iowa. Good Will publishes "Judeo–Christian material," sponsored by private advertisers and distributed primarily through hospitals and doctors' offices. Wilson left home on the afternoon of Sunday, April 16, 1995, to meet a trainee in Dexter, Missouri, at 8 a.m. the next day. He planned to travel partway, sleep for a few hours, and resume the trip. He drove as far as Columbia, Missouri, where he rented a motel room. He awoke between 1 and 2 a.m. with what he thought was indigestion, the result of having eaten a "nice Easter meal with his family" on the day he left Tabor. Apparently unable to sleep any longer, Wilson left the motel, stopping for antacids on the way to Dexter. Immediately after he checked into a motel in Dexter, he sought medical attention. At a local clinic, a nurse diagnosed a possible heart attack, and he was transported to a hospital in Poplar Bluff, Missouri. He was then flown to St. Louis, where he ultimately had open-heart surgery. Wilson had a history of "significant underlying coronary artery disease," largely due to his heavy cigarette smoking.

Following his surgery, Wilson filed this claim for workers' compensation benefits. Good Will resisted on the ground it was not an injury that arose out of and in the course of his employment. A deputy workers' compensation commissioner denied benefits on the ground the claimant failed to establish his work was the legal or medical cause of his heart attack, as required by our cases. This decision was affirmed by the commissioner. The district court affirmed the denial of benefits but substituted its own findings for those of the agency as to the question of legal causation: whether Wilson was "impelled to continue" working after experiencing the first symptoms of a heart attack. The district court nevertheless affirmed the commissioner on the ground the claimant did not show medical causation.

The court of appeals reversed on the basis that Wilson produced substantial evidence on both legal and medical causation and remanded to the commissioner to determine benefits.

## II. Legal Principles.

■ Heart attack cases may be compensated under Iowa's workers' compensation statute under special rules adopted by this court. The parties agree that a claimant must prove both "legal" and "medical" causation. *Riley v. Oscar Mayer Foods Corp.*, 532 N.W.2d 489, 492 (Iowa App. 1995) (citing *Briar Cliff College v. Campolo*, 360 N.W.2d 91, 94–95 (Iowa 1984); *Sondag v. Ferris Hardware*, 220 N.W.2d 903, 905–06 (Iowa 1974)).

■ We review rulings by the commissioner under Iowa Code chapter 17A. *See* Iowa Code § 86.26 (2001); *Cargill, Inc. v. Conley*, 620 N.W.2d 496, 500 (Iowa 2000). Review by the district court, and by this court, is limited to correction of legal errors. *Second Injury Fund v. Shank*, 516 N.W.2d 808, 812 (Iowa 1994). The findings of the commissioner are treated like jury verdicts, and we construe them broadly to uphold the commissioner's decision. *Id.*

■ Although a claimant must establish both legal and medical causation, we limit our discussion to the legal-causation issue because the claimant's failure to establish that element determines the outcome. Legal causation may be shown when (1) heavy exertions ordinarily required by the job are superimposed on a defective heart, aggravating or accelerating the previous condition; (2) unusually strenuous employ-

ment exertion is superimposed on a preexisting diseased condition; or (3) damage results from continued exertion required by the employment after the onset of the heart attack symptoms. *Sondag,* 220 N.W.2d at 905–06.

■ While Wilson relied in his initial claim on all three bases of legal causation under *Sondag,* his judicial review petition and this appeal are limited to the third: continued exertion required by his employment after the onset of symptoms. Specifically, he relies on this language from *Sondag:*

> "The most obvious relevance of this [third] element (continuing exertion after symptoms) is in showing causal connection between the obligations of the employment and the final injury; for if the workman, for some reason, *feels impelled to continue with his duties when, but for these duties, he could and would have gone somewhere to lie down at once, the causal contribution of the employment to the aggravation of the condition is clear.*"

220 N.W.2d at 906 (emphasis added) (quoting 1A Arthur Larson, *Larson's Workmen's Compensation Law* § 38.64(c), at 7–145).[1] In *Riley,* 532 N.W.2d at 493, we described this motivation as being "driven to work." Wilson contends he was impelled to continue traveling in order to reach his destination in Dexter to continue training Good Will's new representative. This objective, according to Wilson, was so important it was his primary focus, motivated by this language in Good Will's training manual:

ABOVE ALL ... REMEMBER!

> During your new reps first four (4) weeks of his training, he and his family must be the most important thing in your life.

> You have a responsibility to this newest member of the Good Will Family. He and his entire family will be looking to you to teach and lead them to a successful future.

DON'T LET THEM DOWN!

Wilson stated that he continued driving to Dexter to meet his trainee because

> [y]ou have a schedule. The training manual tells you that these people are more important than your own family. You have a sense of obligation, a sense of urgency. It's almost like putting a guilt trip on you, and I took the situation at hand, I followed the company procedure. . . .

Wilson agreed, however, that he did not feel that he would have lost his job or been disciplined if he stopped to seek medical attention.

The commissioner rejected Wilson's "impelled to continue" argument:

> Contrary to claimant's contentions, there is no evidence in the record to support a finding that defendant employer required claimant to continue working after his initial symptoms began. The claimant was free to seek medical attention whenever he felt ill. Claimant was not under orders to continue working after his symptoms began. . . .

> . . . .

> The evidence does not support a conclusion that the claimant was required to keep working. There is no doubt that the claimant is a conscientious worker who wanted to do the best by defendant employer. However, that in and of itself does not establish that the employer de-

---

1. Although *Sondag* and the parties to this appeal refer to the three bases for legal causation as "elements," suggesting they are jointly necessary conditions, they are actually individually sufficient bases for finding legal causation.

manded or expected claimant to continue working when experiencing a medical condition or medical discomfort or symptoms requiring medical attention.

Wilson's own statements support the commissioner's finding that he was free to seek medical attention whenever he felt ill. Wilson believed, at least until he reached Dexter, that he only had indigestion. When he arrived there and realized his condition might be more serious than that, he immediately suspended his work and sought medical help.

While the language of the commissioner's findings did not use the "impelled to continue" language of *Sondag*, the gist of the findings is clear: because Wilson was free to seek medical attention without employment restraints, he did not meet the *Sondag* test. We will construe the commissioner's findings broadly to support his conclusion, i.e., that Wilson failed to meet the third legal-causation test of *Sondag*. *See Shank*, 516 N.W.2d at 812 (court to apply broadly commissioner's findings to support its decision).

The district court substituted its fact-finding for that of the industrial commissioner on this issue, finding that Wilson was impelled to continue working. We conclude this was error; a district court is not free to substitute its findings of fact for that of the commissioner if the commissioner's findings are supported by substantial evidence. However, the district court denied benefits on the ground the claimant had failed to establish medical causation. We therefore affirm its decision, although on a different ground.

While the parties argue about whether the claimant had established medical causation, we need not address that issue because a claimant must establish both legal and medical causation. *Riley*, 532 N.W.2d at 492. This claim must fail for lack of proof of legal causation. We also

decline to address the parties' argument on appeal about whether the "impelled to continue" standard of *Sondag* is judged on a subjective or objective basis because the court of appeals, not the parties, interjected that issue. It was therefore waived.

We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except WIGGINS, J., who takes no part.